

**FILED**

4:12 pm, 2/22/22

**Margaret Botkins
Clerk of Court**

UNITED STATES DISTRICT COURT
DISTRICT OF WYOMING

| | | |
|---|---|---|
| WHOOSTER, INC.<br>    Plaintiff, | §<br>§<br>§ | |
| vs. | §<br>§ | Case No. 22-CV-41-J |
| SHADOWDRAGON, LLC<br>    Defendant. | §<br>§<br>§ | |

## COMPLAINT AND
## APPLICATION FOR TEMPORARY RESTRAINING ORDER
## AND TEMPORARY INJUNCTION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiff, Whooster, Inc. ("Plaintiff"), and brings this Complaint and Application for Temporary Restraining Order and Temporary Injunction against Defendant, ShadowDragon, LLC ("Defendant"), and for causes of action would respectfully show unto this Court the following:

### NATURE OF THE CASE

1. This is an action for breach of contract, declaratory judgment, and for a temporary restraining order and temporary injunction, due to Defendant's breach of contract which will result in irreparable harm to Plaintiff.

### PARTIES

2. Plaintiff, Whooster, Inc., is corporation organized under the laws of the State of Delaware, with its principal place of business at 112 Cimarron Park Loop, Suite C, Buda, Texas 78610.

3. Defendant, ShadowDragon, LLC, is a limited liability company organized under the laws of the State of Wyoming, with its principal place of business at 1505 E 16th Street, Cheyenne, Wyoming 82001.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332, as there is complete diversity of citizenship of the parties to this action.

5. This Court has personal jurisdiction over Defendant because it is a Wyoming limited liability company with a registered agent in Wyoming, and transacts business in Wyoming, including by offering and promoting its products and services within this District.

6. Venue is proper in this District pursuant to 28 USC § 1391(b) and (c).

## FACTS

7. Plaintiff is a data resources company providing access to public and private data, to obtain reliable information on individuals and companies for its customers and end-users. This information is used commonly by law enforcement agencies across all 50 states and the U.S., to provide real-time information for locating individuals and obtaining current, up to date information on them.

8. Plaintiff uses its own technology as well as the technology and resources of several of its data suppliers, one of them being Defendant. Defendant offers a unique set of information scrubbed primarily from social media platforms which Plaintiff integrates into some of its packages and offerings to its final customers. The information from Defendant is of high importance and critical to many of the end-users' needs.

9. Plaintiff and Defendant entered in to a contract on July 30, 2020 ("Contract"), a copy of which is attached hereto as Exhibit "A". The Contract provides that Plaintiff, as the Integrator, would integrate the services of Defendant, as the Vendor, in order for Plaintiff to provide electronic data to Plaintiff's clients, the end-users. There are 'per query' rates charged by Defendant for each search or query by the end-user. Plaintiff integrates the unique services of a

number of other data vendors in this same fashion and provides a wide variety of public and private person and business data and search applications for its clients and end-users.

10. The particular clauses at issue in the Contract are the Attribution Clause (at Section III subsection K) and the Termination Clause (at Section XI subsection B 2).

The Attribution Clause states as follows:

For each product created or sold by Integrator in which Vendor's software is integrated, Integrator shall provide a form of messaging and promotion that the product is utilizing Vendor's software, This messaging shall be approved by the Vendor prior to release. The initial steps taken will include placement of Vendor's logo on Integrator's website and a press release promoting the partnership and capabilities.

The Termination Clause states as follows:

Either Integrator or Vendor may, with respect to each other, terminate any Purchase Order upon thirty (30) days prior written notice of termination, for material breach of such Purchase Order by the other Party, if the other Party does not cure such breach within such thirty (30) day period. Such notice shall set forth in reasonable detail the nature of the breach and the date of termination.

11. A dispute arose on or about April 6, 2021, when Defendant notified Plaintiff that it believed Plaintiff was in violation of the Attribution Clause, in that it was not getting the advertised recognition that it believed it was entitled to, and that it was terminating the agreement. See letter of termination attached as Exhibit "B".

12. Previously, On January 13, 2021, both Plaintiff and Defendant had agreed upon a joint press release, the addition of an attribution of Defendant on the Plaintiff's website, and a social media product search marketing material that Plaintiff sent to its customers who were specifically interested in the social media aspects of the search engines and applications that Plaintiff offered. See the agreed upon attribution language attached as Exhibit "C".

13. The parties continued to perform under the contract without complaint until June 2021 when Defendant offered a proposed Amendment to the existing contract. The proposed

Amended is attached as Exhibit "D". It should be noted by the Court that there were no further complaints by Defendant that Plaintiff was in breach of any part of the existing contract.

14. Despite on-going communication between the parties, Defendant insists that Plaintiff is again in violation of the Attribution Clause, and is seeking termination of the contract. Defendant reached out via letter on January 24, 2022 with more vague complaints about Plaintiff breaching the attribution clause of the contract, but again with no concrete statements nor any time to cure such alleged breaches by Plaintiff. See January 24, 2022 letter attached as "Exhibit E". See also, attached as "Exhibit F", an email from Plaintiff's counsel to Defendant again seeking clarification as to how it is in breach of the contract and what it needs to do to rectify the situation.

15. Plaintiff has not been given any reasonable explanation, as is mandated by the Contract, regarding how Plaintiff is in breach, and therefore Plaintiff cannot appropriately cure any such unexplained breach, within the thirty (30) day cure period provided for in the Contract.

## COUNT ONE: BREACH OF CONTRACT

16. Plaintiff incorporates herein all of the foregoing facts and allegations.

17. Plaintiff would show the Court that Defendant, without required cause, breached the Contract by failing to give proper notice to Plaintiff of an alleged breach of the Attribution Clause, depriving Plaintiff of any opportunity to cure such alleged breach within thirty (30) days.

18. Plaintiff has made numerous efforts to obtain clarification regarding what conduct is alleged to be in breach of the Attribution Clause, but Plaintiff has been given only cryptic details and little information. In addition, Defendant refused to add any such clarifying attribution language to the contract so that Plaintiff could satisfy their requests.

19. Plaintiff will show that the latest attempt by Defendant to allege breach of the Attribution Clause lacked any concrete facts or statements to properly put Plaintiff on notice of the conduct which it could cure within the thirty (30) day cure period, to avoid termination of the

Contract. Defendant has done nothing more than allude to the fact that it would like additional attribution and advertisement credit, which Plaintiff has given numerous times on its websites, at tradeshows, and webinars

20. Defendant's failure to provide a clear description of the conduct which is alleged to be in breach of the Attribution Clause, making it impossible for Plaintiff to exercise its right to cure within thirty (30) days of such alleged breach, constitutes a breach of the Contract by Defendant.

21. Plaintiff has suffered damages proximately caused by Defendant's breach of the Contract, for which Plaintiff seeks recovery from Defendant.

22. All conditions precedent to recovery by Plaintiff have been satisfied by Plaintiff, or waived by Defendant.

## COUNT TWO- DECLARATORY JUDGMENT

23. The foregoing paragraphs are incorporated herein by reference.

24. A justiciable controversy exists between Plaintiff and Defendant. More specifically, Defendant is in breach of the contract covenants and is causing harm to Plaintiff through its breach.

25. Pursuant to Chapter 37 of the Wyoming Code of Civil Procedure, Plaintiff seeks declarations from the Court that:

- Defendant is in breach of the contract at issue herein; and
- Due to Defendant's breach the Plaintiff is suffering harm, both monetarily and non-monetarily.

## APPLICATION FOR TEMPORARY RESTRAINING ORDER

26. Plaintiff has existing contracts with outside end-users which rely on all of Plaintiff's advertised products to be available including the services that Defendant provides and which are integrated into Plaintiff's platform.

27. Defendant's breach of the Contract and pulling its services from Plaintiff's platform will cause Plaintiff to breach countless contracts it has outstanding with other end-users and its customers, and will cause irreparable harm to the reputation, goodwill, and existing business relationships of Plaintiff.

28. Accordingly, Plaintiff requests that the Court enter a Temporary Restraining Order, ordering that SHADOWDRAGON, LLC, and their agents, employees, officers, and/or directors, are restrained from, and shall take no action to, directly or indirectly, impair, deprive, or cancel any service or access to their API's, database or servers from use and/or access by Whooster, Inc. and Whooster, Inc.'s customers and/or end users, as otherwise permitted under the Contract.

29. It is probable that Plaintiff will recover on its causes of action against Defendant.

## APPLICATION FOR TEMPORARY INJUNCTION

30. Plaintiff asks the Court to set its Application for Temporary Injunction for hearing, and after hearing the Application, issue a temporary injunction against Defendant, ordering that SHADOWDRAGON, LLC, and their agents, employees, officers, and/or directors, are restrained from, and shall take no action to, directly or indirectly, impair, deprive, or cancel any service or access to their API's, database or servers from use and/or access by Whooster, Inc. and Whooster, Inc.'s customers and/or end users, as otherwise permitted under the Contract.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff WHOOSTER, INC. prays that Defendant be cited to appear, and that this Court enter judgment in its favor on each and every

claim for relief set forth above, and award it the following relief:

1. judgment against Defendant for damages in an amount in excess of the minimum jurisdictional limits of the Court;

2. a temporary restraining order and temporary injunction, ordering Defendant and their agents, employees, officers and/or directors and all those in active concert or participation with them, to take no action to, directly or indirectly impair, deprive, or cancel any service or access to their database or servers from use and/or access to Whooster, Inc. and Whooster, Inc.'s customers and/or end users, as otherwise permitted under the Contract;

3. a Declaratory Judgment that Defendant is in breach of the contract with Plaintiff, and such breach is causing harm to Plaintiff;

4. reasonable and necessary attorney's fees and expenses;

5. pre-judgment and post-judgment interest at the highest rates allowed by law;

6. costs of court; and

7. such other and further relief, both general and special, at law and/or in equity, to which Plaintiff may show itself to be justly entitled.



Respectfully submitted,

Thomas B. Quinn
Wyoming Bar No. 5-2630
tquinn@grsm.com

GORDON & REES
515 E. Ivinson Ave, Suite 108
Laramie, WY 82070
Phone: (307) 365-6741
Fax: (307) 222-7825

555 Seventeenth St, Suite 3400
Denver, CO 80202
Phone: (303) 534-5160
Fax: (303) 534-5161

**ATTORNEY-IN-CHARGE FOR PLAINTIFF WHOOSTER, INC.**

Of Counsel:

**GORDON & REES**

Joseph W. DiCecco
jdicecco@grsm.com
Glenn R. LeMay
glemay@grsm.com
Jill K. Evangelista
jevangelista@grsm.com
1900 West Loop South, Suite 1000
Houston, Texas 77027
(713) 961-3366 – Telephone
(713) 961-3938 – Facsimile